**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Hon. Donald R. Cassling |
| **B.A.S.S. & M., Inc**., *et al.*, | Case No. 24-bk-15381 |
| Debtor. | Chapter 11 |
| | Hearing Date: January 21, 2025 |
| | Hearing Time: 9:30 a.m. |

<u>**NOTICE OF MOTION**</u>

TO: See attached Service List

PLEASE TAKE NOTICE that on January 21, 2025 at 9:30 a.m, I will appear before the Honorable Donald R. Cassling, or any judge sitting in that judge's place, **either** in courtroom 619 of the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn St., Chicago, Illinois, 60604, **or** electronically as described below, and present the **City of Chicago's Motion to Determine Stay Does Not Apply or in the Alternative to Lift the Automatic Stay at the City of Chicago Department of Administrative Hearings**, a copy of which is attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, go to this link https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode**. The meeting ID for this hearing is 161 414 7941, and the passcode is 619. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

1

By:      /s/ David Paul Holtkamp
Deputy Corporation Counsel

Mary Richardson-Lowry
Corporation Counsel
David P. Holtkamp
Deputy Corporation Counsel
Chicago Department of Law
121 N. LaSalle St., Suite 400
Chicago, IL  60602
312-744-6967
david.holtkamp2@cityofchicago.org

## CERTIFICATE OF SERVICE

I, David Paul Holtkamp, an attorney, hereby certify that on January 14, 2025, I caused a copy of the attached **City of Chicago's Motion to Determine Stay Does Not Apply or in the Alternative to Lift the Automatic Stay at the City of Chicago Department of Administrative Hearings** to be served via the court's electronic noticing system for Registrants on those designated to receive such service as provided on the attached Service List.

/s/ David Paul Holtkamp

## SERVICE LIST

### Registrants
(Via CM/ECF)

- Michael A Brandess   michael.brandess@huschblackwell.com, Docket.Bankruptcy@huschblackwell.com, michael-brandess-5090@ecf.pacerpro.com

- Adam G. Brief   Ustpregion11.es.ecf@usdoj.gov

- Lynn Hamilton Butler   lynn.butler@huschblackwell.com, penny.keller@huschblackwell.com, christine.deacon@huschblackwell.com, Georgia.Kimbrough@huschblackwell.com, lynn-hamilton-butler-2113@ecf.pacerpro.com

- Edward Casmere   ed.casmere@nortonrosefulbright.com, robert.hirsh@nortonrosefulbright.com, eric.daucher@nortonrosefulbright.com, nymcocalendaring@nortonrosefulbright.com, calendaring-nortonrose-9955@ecf.pacerpro.com

- Peter Cavanaugh   peter.cavanaugh@cityofchicago.org

- Jaime Dowell   jaime.dowell@cityofchicago.org

- Ryan C Hardy   rhardy@lplegal.com, nbailey@lplegal.com, druiz@lplegal.com;kpatton@lplegal.com, ikropiewnicka@lplegal.com

- David Paul Holtkamp   david.holtkamp2@cityofchicago.org

- Monique B Howery   mhowery@rshc-law.com, docketdept@rshc-law.com

- Richard A. Saldinger   saldinger@lsclegal.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Hon. Donald R. Cassling |
| **B.A.S.S. & M., Inc**., *et al*., | Case No. 24-bk-15381 |
| Debtor. | Chapter 11 |
| | Hearing Date: January 21, 2025<br>Hearing Time: 9:30 a.m. |

**CITY OF CHICAGO'S MOTION TO DETERMINE STAY DOES NOT APPLY OR, IN
THE ALTERNATIVE, TO LIFT THE AUTOMATIC STAY AT THE CITY OF
CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS**

The Debtors have amassed over 900 pending citations for health and safety violations of the

Municipal Code of Chicago over the past year. The City is eager to exercise its police powers and

prosecute these violations at the City of Chicago Department of Administrative Hearings

("DOAH"). The City seeks an order from the Court determining that these cases fall within the

police powers exception to the automatic stay under 11 U.S.C. § 362(b)(4), or in the alternative,

to lift the automatic stay to allow the City to pursue these cases against the Debtors (there are also

non-debtor respondents not stayed in these cases) for cause under 11 U.S.C. § 362(d). In either

event, the City only seeks an order allowing it to liquidate these claims by reducing them to judg-

ment. The City does not seek to enforce any judgment against the Debtors or their estates.

## BACKGROUND

To protect Chicagoans, the Municipal Code of Chicago ("MCC" or "Code") establishes mini-

mum standards for property maintenance. For example, property owners may not let waste accu-

mulate on their yards because waste is an attractive nuisance for children and harbors disease-

1

carrying rats. MCC §§ 7-28-710, 7-28-720. Property owners must remove abandoned motor vehi-cles from their lots because they leach dangerous substances, like mercury, lead, antifreeze, and brake fluid. *Id*. § 7-28-450(a). And property owners need to mow their lawns because high weeds conceal illegal activities, obscure dangerous debris, and serve as a breeding ground for disease-carrying mosquitoes. *Id*. § 7-28-120.

The City is dedicated to ensuring compliance with these ordinances and its other health and safety ordinances. The City encourages residents to report violations in their neighborhoods and invests in reporting systems. *See, e.g.*, MCC § 7-28-445. The City designates resources for inspec-tors who investigate these reports. Inspectors also routinely monitor neighborhoods for any health and safety problems. When inspectors observe a violation, they document the violation and issue citations. The citations are referred for prosecution at DOAH.

Due to the joint Debtors' failure to maintain their over 700 properties in the City, the City cited the Debtors more than 900 times for such violations in the past year. Over 500 of these tickets also cite non-debtor entities. The Debtors' violations threaten the health and safety of communities, families, and the children that live and play near the Debtors' lots. True and correct pictures of some of these violations are provided in Figures 1-3:



*Figure 1.* A violation of MCC § 7-28-710 by Debtor Debrox, LLC, pending under Dkt. No. 24DS13949M.

As depicted in the image above, this violation occurred in a lot adjacent to a playground.



*Figure 2:* A violation of MCC § 7-28-450(a) by Debtor Darden, LLC, pending under Dkt. No. 24DS28639M.



*Figure 3:* A violation of MCC § 7-28-120 by Debtor Derby, LLC, pending under Dkt. No. 24DS17230M.

3

Actions to prosecute these violations, and 900 others, are pending at DOAH ("Enforcement Actions"). The City moves for the Court to confirm it may proceed with the Enforcement Actions.

## ARGUMENT

The Enforcement Actions fall within the police power exception to the automatic stay. The City only seeks to liquidate its claims by obtaining judgments. The City does not seek to enforce any judgments against the Debtors at this time. The City is a governmental unit that merely seeks to commence and continue actions to enforce its Code by determining the appropriate fine amount.

In the alternative, even if the stay should apply, there is cause to lift the stay. The Enforcement Actions represent over 900 violations of the Code.  Each one of these violations is assigned a different case at the City's Department of Administrative Hearings and receives a different hearing. This is because the violations are at different properties, with different inspectors, with different pictures and evidence, at different times, and under different Municipal Code sections. In short, they need to be adjudicated separately. If these matters are stayed, that does not change the fact that they must each be adjudicated on their own facts. This court should not turn itself into a court to adjudicate every violation of the Municipal Code against these 21 Debtors. The Enforcement Actions certainly more appropriately and more efficiently litigated before DOAH. Also, the Enforcement Actions include non-debtor entities that should not be allowed to hide behind the stay.

## I.   The Enforcement Actions are Exempted from the Automatic Stay.

When a bankruptcy case is filed the automatic stay goes into effect. 11 U.S.C. § 362(a). The automatic stay "operates as a stay, applicable to all entities, of … the commencement or continuation … of a judicial … action or proceeding against the debtor that was or could have been commenced before the commencement of the cause under this title…" *Id.* § 362(a)(1). However, the

4

stay does not affect certain proceedings, including "the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's … police and regulatory power, …" *Id*. § 362(b)(4).

The legislative history of § 362(b)(4) clearly explains when the police power exception applies. It provides:

> [W]here a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, **or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay**.

*Matter of Cash Currency Exch., Inc.*, 762 F.2d 542, 555 (7th Cir. 1985), *quoting* S. Rep. No. 989, 95th Cong., 2d Sess. 52 (1978), U.S.C. Cong. & Admin. News, pp. 5787, 5838 (emphasis added). Thus, the exception applies when the case is merely to set the dollar amount of the fines.

This is exactly what the City seeks to do in the Enforcement Actions. The City is a governmental unit as defined in 11 U.S.C. § 101(27), and it merely seeks to "fix damages for violation of [a health and safety] law." *See Matter of Cash Currency Exch., Inc.*, 762 F.2d at 555. The City is not attempting to exercise any control over any property or to enforce any money judgment against the Debtors or their estates. It is simply seeking a liquidated number for the violations in the form of judgments. The Enforcement Actions fall squarely within the police-power exception to the stay.

In situations where application of the exception is a close call, such as in contempt proceedings, or where withholding property may be concerned, courts look to the "pecuniary purpose test" and the "public policy test." *In re Erhardt*, 618 B.R. 832, 842 (N.D. Ill. 2020). Neither test needs to be applied here because the Enforcement Actions clearly fall within the exception. But even if this were a close call (which it is not), the actions pass either test.

5

The Enforcement Actions easily pass the pecuniary purpose test. "The pecuniary purpose test requires the court to look to what specific acts the government wishes to carry out and determine if such execution would result in an economic advantage over third parties in relation to the debtor's estate." *Id.* (internal citation omitted). And "[i]f the government's acts are directed to health and safety concerns, § 362(b)(4) applies; if the focus of the police power is directed at the debtor's financial obligations, however, the exception does not apply." *Id.*

First, proceeding with the Enforcement Actions provides no advantage to the City over any other creditors.[1] The Enforcement Actions merely provide a means to liquidate debts owed by the Debtors that can then be used to formulate a plan or means to further the bankruptcy cases. And that must be done in any event. The Enforcement Actions are certainly claims against these estates and, whether through the claims process or in the Enforcement Actions, the claims will need to be liquidated. As provided below, DOAH is the much better forum to do that. Allowing the Enforcement Actions to move forward at DOAH provides the City with no advantage over any other parties in the case.

Second, the Enforcement Actions are driven by the City's health and safety concerns, as evidenced by the *types* of violations the City is prosecuting. "[A]ctions to enforce [a governmental unit's] property maintenance standards by issuing ordinance violation citations, orders to comply, and notices of potential civil penalties constitute[] actions by a governmental unit to enforce its police or regulatory power, and § 362(b)(4) excepts those actions from the automatic stay." *In re*

_____

[1] Even if the Enforcement Actions resulted in an economic advantage over other creditors, that advantage would not be dispositive. *In re Emerald Casino, Inc.*, 2003 WL 23147946, *8-9 (N.D. Ill. Dec. 24, 2003); *In re Hicks*, 582 B.R. 6, 13 (Bankr. N.D. Ill. 2018).

6

*Phillips*, 368 B.R. 733, 741 (Bankr. N.D. Ind. 2007); *see also, In re Herrera*, 194 B.R. 178, 185

(Bankr. N.D. Ill. 1996) (inspection of debtor's real property exempted from automatic stay); *In re*

*Weller*, 189 B.R. 467, 471 (Bankr. E.D. Wis. 1995) (action related to housing code violations

exempted from automatic stay); *In re Smith-Goodson*, 144 B.R. 72, 74 (Bankr. S.D. Ohio 1992)

(action related to housing, fire prevention, and nuisance standards exempted from automatic stay);

*cf. Discount Inn, Inc. v. City of Chicago*, 803 F.3d 317, 321 (7th Cir. 2015) (City has a valid interest

in weed control). In *In re Phillips*, the court held that the enforcement of an ordinance targeted at

waste accumulation was exempted from the automatic stay as a matter of law. *In re Phillips*, 368

B.R. 733, 740 (Bankr. N.D. Ind. 2007). The City seeks to enforce substantially similar ordinances.

*Compare* South Bend Mun. Code, Art. 8, § 16–53(b) with MCC § 7-28-710 and § 7-28-720. The

Enforcement Actions are driven by health and safety concerns.

The City's health and safety concerns are also evidenced by the *number* of violations the City

is prosecuting. In *In re Hicks*, the court specifically noted the debtor's "extraordinary record of

offenses" when concluding that the government's action was directed at its health and safety con-

cerns. 582 B.R. 6, 13-14 (Bankr. N.D. Ill. 2018). The *In re Hicks* debtor's "extraordinary record

of offenses" included fifty pending citations. *Id.* At DOAH alone, Debtors face 900 citations, an

eighteen-fold increase over the *In re Hicks* debtor. And again, these types of citations result from

routine inspections and reports from affected neighbors, not from any sort of targeted effort. Debt-

ors have hundreds of tickets because they own hundreds of unmaintained lots. The Enforcement

Actions are driven by citizens' health and safety concerns.

The City's health and safety concerns are not diminished by the type of sanction the City seeks.

It would not matter if the Debtors immediately remediated the 900 violations and all that remained

was fixing the fines. Even wholly pecuniary actions are exempt from the stay. *Alpern v. Lieb*, 11

7

F.3d 689, 690 (7th Cir. 1993); *In re Hicks*, 582 B.R. at 13. This only makes sense: fines deter violators from continuing to violate the law and also to stop others from doing the same. That is a valid police power function. *See In re Emerald Casino*, *Inc*., 2003 WL 23147946, at *6 (N.D. Ill. Dec. 24, 2003) ("'general deterrence' is a proper exercise of police and regulatory power under section 362(b)(4)."). The City easily satisfies the pecuniary purpose test.

The City also satisfies the public policy test. The "public policy test considers whether the state action is principally to effectuate public policy or to adjudicate private rights." *In re Erhardt*, 618 B.R. 832, 842 (N.D. Ill. 2020). Here, there are no private rights involved. This is not a case to enforce contract rights between the parties or some sale transaction. The City is pursuing the Enforcement Actions to enforce the City's health and safety laws. Thus, the City satisfies the public policy test, too. The Enforcement Actions are not stayed, and this Court should enter an order providing that the City may proceed with those actions to judgment.

## II.  If the Stay Applies, then it Should be Lifted.

Even if the police power exception did not apply, the Court should lift the stay to allow the City to pursue the Enforcement Actions to judgment. Pursuant to § 362(d), this court may lift the automatic stay "for cause." 11 U.S.C. § 362(d). "Cause" is not exclusively defined in §362(d). But Congress recognized that it "will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." *Matter of Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982) *citing* S. Rep. No. 989, 95th Cong., 2d Sess. 50, reprinted in (1978) U.S.C. Cong. & Ad. News 5836.

When determining whether "cause" exists to lift the stay to allow a prepetition suit to move forward, courts look at: (a) whether there would be great prejudice to the estate; (b) whether the hardship on the movant in maintaining the stay outweighs the hardship to the debtor if it were lifted; and (c) the probability of prevailing on the merits. *See Matter of Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991); *see also, In re Stewart*, 649 B.R. 755, 759 (Bankr. N.D. Ill. 2023).

First, there would be no prejudice to the estate. In fact, allowing the Enforcement Actions to proceed at DOAH is the most efficient means of liquidating these claims. Each one of the Enforcement Actions must be prosecuted on its own proofs, its own pictures, from its own inspector, on the day cited, against the "owner" liable, under the Municipal Code cited. These cases cannot be clumped together without disregarding the rights of the respondents, or the ability of the City to effectively prosecuted its claims. The only place to effectively do that is in DOAH. If relegated to the claims objection process this Court will be required to determine whether each violations occurred, by which Debtor, and then impose the appropriate fine under the law—hundreds of times. That makes no sense.

There are also affiliated non-debtor respondents that the City intends to proceed against at DOAH notwithstanding the bankruptcy cases. The issues and damages are identical for the Debtors and non-debtor parties. And as provided in the Declaration of Suzie Wilson, Dkt. No. 24, she is the primary manager of the Debtors, a respondent in 500 of the Enforcement Actions, her attorney in the Enforcement Actions is special counsel here, and she will need to defend the Enforcement Actions no matter what. It makes no sense to have the over 900 Enforcement Actions expanded into 1,400 parts: all 900 actions would need to go through the bankruptcy claims process and 500

9

of the Enforcement Actions (those with non-debtor respondents) would still need to be heard at DOAH. Factor one favors lifting the stay.

Second, the City would be considerably harmed if the stay were imposed to prevent it from pursuing the Enforcement Actions at DOAH. Again, the City would need to pursue the same claims in two venues instead of just one. Or, if the stay were imposed, then DOAH could decide to stay the Enforcement Actions until after the bankruptcy were concluded. This would be extremely prejudicial to the City because there are non-debtor entities that the City is entitled to pursue. Additionally, if the stay were imposed then the City could be forced to dismiss the Debtor-respondents from the Enforcement Actions so that it could pursue the non-debtor respondents separately. That could create conflicting judgments or give the Debtors the argument that the City waived its rights against them completely. The City should not be required to make that choice.

Finally, the City is all but certain to prevail in the Enforcement Actions. The Code provides no discretion for a court to allow violators off the hook once the violation is established. All the City needs to show for a violation is that the Debtors and the other respondents were the "owners" of the properties, as defined in the Code, while the lots were in conditions that violated the Code. There is no doubt that the Debtors fit within the definition of owner. *See* MCC § 14A-2-202. There is also no doubt that the non-debtor respondents fit within the definition of owner. *See, e.g.,* Ex A (DOAH orders finding Wilson is an "owner" under the MCC). As a side note, such a finding exists for the purpose of establishing liability *only*. The finding has no legal effect on who actually owns the properties. Thus, all that is left to determine is that the lots were in a condition that violated the Code. The City is all but certain to prevail on that, too. The City has photographs, including those depicted in Figures 1, 2, and 3, showing the condition of the lots. Those photographs show, by a preponderance of the evidence, that the properties were in violation of the Code.

10

Thus, all factors weigh in favor of lifting the stay to allow the City to move forward with the

Enforcement Actions.

## CONCLUSION

The automatic stay does not apply to the Enforcement Actions against the Debtors because the

police power exception under 11 U.S.C. § 362(b)(4) applies. Even in the event that the stay does

apply, this Court should lift the automatic stay for cause under 11 U.S.C. § 362(d).

THEREFORE, the City respectfully requests that this Court enter an order substantially in the

form submitted with the motion authorizing the City to proceed with the Enforcement Actions to

judgment, but not to collect on those judgments.

Dated: January 14, 2025                    Respectfully Submitted,


                                           CITY OF CHICAGO

                                           Corporation Counsel
                                           Mary B. Richardson-Lowry

                                           By: David Paul Holtkamp

                                           David P. Holtkamp (ARDC# 6298815)
                                           Deputy Corporation Counsel
                                           City of Chicago Department of Law
                                           121 N. LaSalle St., Ste. 400
                                           Chicago, IL 60602
                                           312-744-6967
                                           David.Holtkamp2@cityofchicago.org

11