**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>**B.A.S.S. & M., INC., ET AL.,**<br><br>Debtors. | Hon. Daniel Fine<br><br>No. 24-15381<br>Chapter 7<br><br>Hearing Date: 09/15/2026<br>Hearing Time: 10:00 a.m. |

**NOTICE OF MOTION**

TO: See attached Service List

PLEASE TAKE NOTICE that on September 15, 2026 at 10:00 a.m., I will appear before the Honorable Daniel Fine or any judge sitting in that judge's place, either in courtroom 619 of the Everett McKinley Dirksen U.S. Courthouse, 219 S. Dearborn Street, Chicago, Illinois, 60604, or electronically as described below, and present the City of Chicago's Motion for a Finding of Civil Contempt Against Douglas Belofsky and to Compel Production, a copy of which is attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, go to this link https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode**. The meeting ID for this hearing is 161 414 7941, and no passcode is required. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

Dated: September 8, 2026

Respectfully submitted,

**CITY OF CHICAGO**

Corporation Counsel
Mary B. Richardson-Lowry

By /s/ Angelica Harb
Assistant Corporation Counsel

Angelica Harb, Assistant Corporation Counsel
City of Chicago Department of Law
121 North La Salle Street, Suite 400
Chicago, Illinois 60602
312-742-0661
Angelica.harb@cityofchicago.org
COALservice@cityofchicago.org

## CERTIFICATE OF SERVICE

I, Angelica Harb, an attorney, hereby certify that on September 8, 2026, I caused a copy of the attached Motion for a Finding of Civil Contempt Against Douglas Belofsky and to Compel Production to be served via the court's electronic noticing system for Registrants on those designated to receive such service as provided on the below Service List.

Dated September 8, 2026 /s/ Angelica Harb
Assistant Corporation Counsel

## Service List

**Registrants**

(Via CM/ECF)

- Paul M. Bach paul@bachoffices.com, pnbach@bachoffices.com;bachecf@gmail.com;bach.paulm.b122358@notify.bestcase.com
- Michael A Brandess michael.brandess@huschblackwell.com, Docket.Bankruptcy@huschblackwell.com;michael-brandess-5090@ecf.pacerpro.com
- Adam G. Brief Ustpregion11.es.ecf@usdoj.gov
- Edward Casmere ed.casmere@nortonrosefulbright.com, robert.hirsh@nortonrosefulbright.com,eric.daucher@nortonrosefulbright.com,nymcocalendaring@nortonrosefulbright.com,calendaring-nortonrose-9955@ecf.pacerpro.com
- Peter Cavanaugh peter.cavanaugh@cityofchicago.org
- Elizabeth Conard Elizabeth.conard@cityofchicago.org
- Jonathan M. Cyrluk cyrluk@carpenterlipps.com, figueroa@carpenterlipps.com
- Jaime Dowell jaime.dowell@cityofchicago.org
- Ryan C. Hardy rhardy@lplegal.com, nbailey@lplegal.com;druiz@lplegal.com;kpatton@lplegal.com;ikropiewnicka@lplegal.com
- David Paul Holtkamp David.Holtkamp2@cityofchicago.org
- Ariane Holtschlag, trustee aholtschlag@ph-firm.com, aholtschlag@ecf.axosfs.com;bkadmin@axosfs.com;ariane.holtschlag@gmail.com
- Monique B. Howery mhowery@rshc-law.com, docketdept@rshc-law.com
- Laura Lefkow-Hynes laura.lefkow-hynes@cityofchicago.org
- Kristina Anne McClure Kristina.mcclure@cityofchicago.org
- Richard A. Saldinger saldinger@lsclegal.com
- Elizabeth B Vandesteeg evandesteeg@lplegal.com, nbailey@lplegal.com;ikropiewnicka@lplegal.com;druiz@lplegal.com;kpatton@lplegal.com
- Jeffrey Paulsen jpaulsen@ph-firm.com
- Douglas Belofsky douglas@belofsky.com
- Gregory Fouts Gregory.fouts@thompsonhine.com
- Sean Gordon sean.gordon@thompsonhine.com
- George Flynn George.flynn@kaufmandolowich.com; chicagoadmins@kdvlaw.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>**B.A.S.S. & M., INC., ET AL.,**<br><br>Debtors. | Hon. Daniel Fine<br><br>No. 24-15381<br>Chapter 7<br><br>Hearing Date: 09/15/2026<br>Hearing Time: 10:00 a.m. |

**CITY OF CHICAGO'S MOTION FOR A FINDING OF CIVIL CONTEMPT AGAINST DOUGLAS BELOFSKY AND TO COMPEL PRODUCTION**

For seven months, Douglas Belofsky has refused to turn over the Debtors'[1] own property and documents. He ignored a Rule 2004 subpoena. He defied this Court's turnover order, then defied a second order the Court entered on its own motion to make him obey the first. He has produced no invoices, no text messages, no notes, and no memoranda. And he now offers 294 privilege-log entries that describe nothing at all. He asks the City to test a claim of attorney-client privilege and work product against a subject line that reads, in full, "Re: Re:." Ex. A at 14 (Belofsky Withheld Document Privilege Log).

Belofsky's whole position rests on one conceit: that Suzie Wilson and Swedlana Dass consulted him only as private individuals, never as the owner and operators of the 21 Debtors. He said so at the parties' August 20, 2026, conference. He said the

[1] The joint Debtors are: B.A.S.S. & M., Inc., Dagny, LLC, Daisyland, LLC, Darcy, LLC, Darden, LLC, Debrox, LLC, Derby LLC, Dion, LLC, Direct, LLC, Distinctive, LLC, Dorchester, LLC, Dover I, LLC, MGIL, LLC, Real Soil, LLC, Real Taxes, LLC, Regal, LLC, S.T.E.P.A., Inc., STTA LLC, Super I, LLC, Vital, LLC, and Vivid, LLC.

opposite before. He told the City, more than once, that when he gave advice, he never distinguished between Wilson and Dass personally and the entities they owned – that he did not advise at that "granular" a level. Ex. B. Wilson described him in 2024 as "our Corporate attorney," the lawyer who built the South Dakota structure that moved hundreds of properties out of the Debtors. Ex. C.

Time matters. The Estate's claims must be brought before the October 2026 deadline, and the facts supporting those claims sit inside the file Belofsky will not produce. Every week of delay is a week the City and the Trustee cannot use.

Belofsky is in civil contempt. The May 12 Order and the July 21 order each gave him an unambiguous command; he has not substantially complied with either; and he has made no diligent effort to do so. His only answer is privilege, and the Logs he filed refute it. The Court should hold him in contempt and compel production for five reasons:

1. The Privilege Logs are deficient on their face. Rule 26(b)(5) requires a description that lets the other side assess the claim. Not one of the 294 entries supplies one – by the City's count and by simple inspection. Exs. A, D, (Belofsky Redacted Document Privilege Log), F (Belofsky Withheld Document Log with City Analysis), and G (Belofsky Redacted Document Log with City Analysis).
2. The Logs establish no privilege. Exs. F, G. They identify no client, no capacity, no legal advice sought or given, and no anticipated litigation. *Id*. Belofsky asserts no common interest or joint defense privilege even though another lawyer, accountant, or "client" sits on the email. *Id*.

3. The Trustee controls the Debtors' privilege. Belofsky names a Debtor in 212 of the 294 entries. *Id*. Those documents must be produced now.

4. The client file belongs to the client. The Debtors were Belofsky's clients, and the Trustee – with the City standing in the Trustee's shoes – may demand their file.

5. The Logs prove the production is still incomplete. Both Logs contain nothing but emails. Ex. A, D. The Court ordered turnover of all recorded information. Seven months on, Belofsky has neither produced nor logged a single engagement letter, invoice, text message, note or memorandum.

Belofsky bears the burden on every entry, and he has not carried it on one. Nothing left on these Logs gives him a fair ground of doubt about what the order requires. The Court should find him in civil contempt, set purge conditions, and order him to pay the fees his defiance has cost the City.

## I. Background

### A. The Subpoena, the turnover order, and the Court's second order.

On December 16, 2025, this Court granted the City derivative standing to investigate and prosecute avoidance actions and other estate claims, including authority to seek documents in the same manner as the Trustee. Dkt. 739.

On February 18, 2026, the City served Belofsky with a Rule 2004 subpoena returnable on March 13, 2026. It asked for seven categories of documents including all client files for the Debtors; all communications with Wilson or Dass relating to the Debtors; all advice relating to the transfers from B.A.S.S. & M., Inc. to STTA, LLC

and from S.T.E.P.A., Inc. to MGIL, LLC; all billing statements and payment records; and all engagement letters. Belofsky produced nothing.

The City moved to compel under 11 U.S.C. § 542(e). Dkt. 788. Belofsky opposed the motion in writing and at argument. The Court granted it on May 12, 2026, and ordered him to (1) turn over all non-privileged recorded information relating to the Debtor's property or financial affairs; (2) log every document he withheld; (3) coordinate turnover with the City; and (4) comply within 14 days – by May 26, 2026 – or agree with the City on a later date. Dkt. 811 (the "Order"). At the hearing the Court made the scope plain: the Order was not limited by the subpoena, only by § 542(e) itself.

The City conferred with Belofsky on May 19, May 29, and June 5, 2026, and confirmed each conversation by email so that no one could mistake what the Order required. Each time the City gave him more room, extending the privilege-log deadline to June 19, 2026 – more than five weeks after the Order.

Belofsky answered on June 5 that "any privilege log relating to my documents w[ill] relate ONLY to the Debtors, not the so-called affiliated entities." Ex. B. The City replied on June 8, explaining that § 542(e) reaches any recorded information that relates to the Debtors' property or financial affairs, whoever Belofsky believes he was advising, and that anything withheld had to appear on the log. *Id.* That email also recorded what Belofsky had told the City repeatedly: that he never distinguished between Wilson and Dass individually and the companies they managed and owned,

and that he did not give advice at that "granular" a level. *Id*. Belofsky did not dispute the account.

He then missed the extended deadline. He produced two batches of documents, on June 1 and June 11, 2026, and no privilege log. Nearly everything in those batches were court notices of the City's own filings against the Debtors, plus some incorporation papers. There was no email, no text message, no correspondence with his clients, no notes, and no memorandum.

That production cannot be complete. Belofsky helped form many of the Debtors and the Affiliated Entities and serves as their registered agent. He has appeared for the Debtors in court. Wilson testified at the § 341 meeting that he advised on transfers of property between the Debtors and the Affiliated Entities.[2] In November 2024 she described him in writing as "our Corporation attorney," the lawyer who "created the South Dakota Managers for the LLC's" so that City citations would stop naming her and Dass personally. Ex. C. Bank records show the Debtors paid him for legal work. Still, he produced no engagement letter and no invoice.

So the City moved again on July 14, 2026, for compliance and sanctions. Dkt. 832. On July 21, 2026, this Court – on its own motion – ordered Belofsky and the Debtors' accountants to comply fully with the May 12 orders within 14 days and directed

---

[2] The Affiliated Entities are: Discount, Inn, Inc., Random Corp., Vincennes Corp., Rovo, LLC, Victorious, LLC, Turner Properties, Inc., Lot Acquisition, LLC, FCOC, LLC, NRH, LLC, S & M Development I Corp., SNS General Corp., Turner Properties, Inc., Clark LLC, Real Building, LLC, Simple Solo, LLC, Tax Property Investment Fund, LLC, NSW Assets LLC, NSW Properties LLC, Beam of Canaan, LLC, Pulse Path, LLC, and 4311 West Palmer, Inc.

Belofsky to obtain the May 12 transcript if he had any remaining questions about what § 542(e) required. Dkt. 839. That deadline expired on August 4, 2026.

### B. The Privilege Logs

Belofsky then produced more documents and, at last, two logs: a 137-entry log of withheld documents (the "Withheld Log," Ex. A) and a 157-entry log of redacted documents (the "Redacted Log," Ex. D)(together, the "Privilege Logs"). Of the 263 emails he produced, he redacted 157.

The Privilege Logs use the same eight columns: Bates number, date sent, from, to, cc, subject line, Debtors, and privilege. Nothing else.

| Begin Bates Num | Email Sent Date | Email From | Email To | Email CC | Email Subject | Debtor | Privilege |
|---|---|---|---|---|---|---|---|

*Privilege Log column headings – Ex. A at 1.*

There is no column for the document's subject matter, no column for the privilege holder, no column for the capacity of any author or recipient, no column or attachments, and no column stating the basis for the privilege claims. The "Privilege" column takes only three values across 294 entries – "Attorney-Client," "Work Product," or both – and never says whose privilege it is. On the Redacted Logs there is no indication of what was redacted or why any part of the document was withheld rather than produced.

The City reviewed all 294 entries and marked the defects on each. The tallies are these:

| Defect in the entry | Withheld Log (137) | Redacted Log (157) | Total (294) |
|---|---|---|---|
| No description of the document's subject matter | 137 | 157 | 294 |
| No identification of the client | 137 | 157 | 294 |
| No common-interest or joint-defense assertion | 137 | 157 | 294 |
| Work-product elements not established | 127 | 120 | 247 |
| A Debtor is named in the entry | 78 | 134 | 212 |
| Belofsky is copied only | 39 | 25 | 64 |

Exs. F, G.

### C. Five defects run through every entry.

First, no entry describes the document. Exs. A, D. The City cannot test a withholding when the only descriptor is "Update," "Question," "BANKRUPTCY," or "Re: Re:." Ex. A at 1, 4, 14, 17. One withheld entry has no subject line at all. *Id* at 1. A fuller subject line does not cure the problem: "Citations to Discover Assets" names a topic but says nothing about whether anyone sought or gave legal advice. *Id.*

Second, no entry establishes the work product. Belofsky claims work-product protection in 247 entries. Exs. F, G. Not one identifies the litigation anticipated, names the party for whom the materials were prepared, or separates fact work product from opinion work product. *Id.*

Third, no entry identifies the privilege holder. That is the central question in this dispute, because the Trustee controls the privilege of all 21 Debtors. Belofsky names a Debtor in 212 entries and still never says who the client was. *Id.*

Fourth, no entry identifies anyone's capacity – and the Privilege Logs are full of people whose roles are unexplained. Exs. A, D. Richard Saldinger sent 37 of the 137 withheld emails and 30 of the 157 redacted ones. *Id*. Les Oflesky, of the Debtors' accounting firm Shapiro Olefsky & Company, sent 17 more. *Id*. Jason DeVore, Erin Wright, Troy Radunsky, Stephen A. Viz, Alan Shapiro, and Jamie Gabel appear repeatedly as recipients. *Id*. Belofsky himself sent only 44 of the 137 withheld emails; on 39 of them he is merely copied. Ex. F. The Privilege Logs never say who any of these people are, whom they represented, or why their presence did not destroy confidentiality. Exs. A, D. For each entry, Belofsky asserts no common interest and no joint defense. *Id.*

Fifth, no entry accounts for attachments. *Id*. The Withheld Log never states whether an email carried an attachment - even when the subject line says it did. Six withheld entries come from a single thread titled "Austin can you give me a call regarding the attachments?" Ex. A at 1, 7, 8, 27, 28. Belofsky does not say whether those attachments exist, whether he produced them, or why he withheld them. *Id*. No attachment appears anywhere on either Log. *Id*. Ex. D.

The Privilege Logs also contradict themselves. Belofsky told the City his log would cover the Debtors only. Ex. B. Yet he left the "Debtor" column blank on 59 withheld entries and 23 redacted ones. Ex. A and D. Either those 82 documents relate to a

Debtor and he failed to say which, or he logged documents he insists fall outside the Order. Neither reading helps him.

On August 12, 2026, the City wrote to Belofsky, identified these deficiencies and defects, and asked to confer. Ex. E. The parties conferred on August 20, 2026. Belofsky conceded nothing. He would not acknowledge a single deficiency or agree to add a single description. Further conferral would be futile.

## II. Relief Requested

The City asks the Court to find Douglas Belofsky in civil contempt of the May 12, 2026 Order (Dkt. 811) and the July 21, 2026 order (Dkt. 839), and to provide that he may purge the contempt by doing the following within seven days of entry of the order:

(a) produce every document listed on the Withheld Log (Ex. A);

(b) produce, without redaction, every document listed on the Redacted Log (Ex. D); and

(c) produce, or log with the detail Rule 26(b)(5) requires, all remaining recorded information covered by the Order – including engagement letters, billing statements and payment records, text messages, notes and memorandum.

The City further asks the Court to order that, if Belofsky does not purge the contempt within seven days, he pay coercive sanctions of $500 for each day the contempt continues until he does; and to award the City its reasonable attorney's fees and costs for bringing this motion, in an amount to be set on petition.

In the alternative to purge conditions (a) and (b), the City asks the Court to order Belofsky, within seven days of entry of the order, to:

(a) serve a privilege log that complies with Rule 26(b)(5)(A)(ii) as to each of the 294 entries, stating for every document its subject matter, the holder of each privilege asserted, the capacity of every author and recipient, whether the document had an attachment and what became of it, and the specific basis for each privilege asserted;

(b) produce, without redaction, every document he cannot support on that log; and

(c) submit the remaining documents to the Court for *in camera* review.

## III. Argument

### A. Belofsky is in civil contempt of the May 12 and July 21 orders.

Section 105(a) authorizes this Court to hold a party in civil contempt for violating its orders. The City must prove by clear and convincing evidence that (1) the order set out an unambiguous command, (2) Belofsky violated it, and (3) he failed to make a reasonable, diligent effort to comply. *In re Direct Media Power, Inc.*, 582 B.R. 739, 751–52 (Bankr. N.D. Ill. 2018). Willfulness is not an element. *Id.*

Every element is met here. The commands were unambiguous. The May 12 Order told Belofsky to turn over all non-privileged recorded information relating to the Debtors' property or financial affairs, to log everything he withheld, to coordinate turnover with the City, and to do it within 14 days. Dkt. 811. The Court said at the hearing that the Order was not limited by the subpoena, only by § 542(e). When

Belofsky did not comply, the Court acted on its own motion and told him to comply fully within 14 days, and to read the transcript if he still had questions. Dkt. 839.

He violated both. He served no privilege log by May 26, none by the extended June 19 deadline, and none until after the Court's July 21 order. The Privilege Logs he finally served supply none of what Rule 26(b)(5) requires. He continues to withhold or redact 212 documents whose privilege the Trustee controls. And he has neither produced nor logged an invoice, payment record, text message, note, or memorandum.

And he made no diligent effort. Before the first deadline passed he announced that his log would cover "ONLY the Debtors, not the so-called affiliated entities" – a limit the Order does not contain. Ex. B. He held that position through six conferences and two City letters, and at the August 20, 2026 conference he refused to concede a single deficiency or add a single description. A party who narrows a court order to suit himself and then refuses to revisit it has not made a reasonable and diligent effort to comply.

The only thing that could excuse the withholding is privilege and Parts B through E explain why the Logs establish none, and why no fair ground of doubt remains.

**B. The Privilege Logs are deficient on their face.**

Rule 26(b)(5) sets the standard.[3] A party who withholds discoverable information as privileged must "describe the nature of the documents, communications, or tangible things not produced or disclosed— and do so in a manner that, without

[3] Federal Rule of Civil Procedure 26 applies in this contested matter through Federal Rules of Bankruptcy Procedure 7026 and 9014(c).

revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). In this district, that means the log must give, for each document, the date, the author, and every recipient, along with each person's capacity; must describe the subject matter, the purpose for which the document was created, and why the document is privileged; and must supply enough detail for the court to decide whether the party has carried its burden. *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992).

Belofsky supplies none of it. His Logs have no column for any of it. Not one of his 294 entries describes the nature of the document, gives the capacity of a sender or recipient, states why the document was created, or explains why it is privileged.

Belofsky claims both attorney-client privilege and work product over a document whose subject line is "FW: Austin can you give a call regarding the attachments." Ex. A at 1. The entry adds the date, the sender and recipients, and the name of the Debtor Debrox. *Id*. That's it. From those fragments Belofsky expects the City to reconstruct what the document pertains to, who holds the privilege, and why the privilege applies. Rule 26(b)(5) puts that work on him.

Nor does asserting a privilege 294 times establish it 294 times. Ex. A, D. Belofsky must prove every element as to every document, because the mere existence of an attorney-client relationship does not cloak everything a lawyer touches. *Allendale*, 145 F.R.D. at 86. A blanket claim of privilege will not do. *U.S. v. Lawless,* 709 F.2d 485, 487 (7th Cir. 1983). And a party who ignores Rule 26(b)(5) risks sanctions under

Rule 37(b)(2) – including waiver of the very privileges he asserts. *Rossman v. EN Eng'g, LLC*, 335 F.R.D. 171, 173 (N.D. Ill. 2020).

Belofsky has not met his burden on a single entry. The Court should compel production and unredaction.

**C. Even taken at face value, the Logs establish neither work product nor attorney-client privilege.**

"The burden falls on the party seeking to invoke the privilege to establish all the essential elements." *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

***The Logs show no work product.***

To claim work-product protection, Belofsky must show as to each document that it is (1) a document or tangible thing, (2) prepared in anticipation of litigation or for trial, (3) by or for a party or a party's representative. Fed. R. Civ. P. 26(b)(3); *see also*, *Caremark, Inc. v. Affiliated Computer Serv., Inc.*, 195 F.R.D. 610, 613 (N.D. Ill. 2000).

The Privilege Logs satisfy the first element and nothing else. Ex. A, D, F, G. Nothing in them identifies the litigation anticipated, and nothing identifies the party or representatives for whom any document was prepared. *Id.* The 127 withheld and 120 redacted entries resting on work product should therefore be produced. *Id.*

***The Logs never identify the client.***

To claim attorney-client privilege, Belofsky must show as to each document that (1) legal advice of any kind was sought, (2) from a professional legal adviser acting in that capacity, (3) that the communication related to that purpose, (4) that it was made in confidence, (5) by the client, and (6)-(8) that the protection has not been waived. *U.S. v. Evans,* 113 F.3d 1457, 1461 (7th Cir. 1997).

Begin with the client, because that is where the claim collapses. The Trustee owns any privilege between Belofsky and the Debtors, so no Debtor document may be withheld at all. For everything else, Belofsky must say who the client was and why the communication was protected. Across 294 entries, he never does. Exs. A, D, F, G. Part D below explains why his answer – that Wilson and Dass were his clients only as individuals – cannot be squared with his own Logs or his own prior statements.

***The Logs never show that anyone sought or gave legal advice.***

All 294 entries fail the first three *Evans* elements. Exs. A and D. The Privilege Logs show only that Belofsky, a lawyer, appeared somewhere on an email. That gap matters more here than it would elsewhere, because Belofsky has admitted that he also serves as registered agent for some of the Debtors and Affiliated Entities. A communication with a registered agent about registered-agent business is not privileged: no one is seeking legal advice, and the lawyer is not acting as one.

The problem is starker on 64 entries where Belofsky is merely copied. *Id.* Copying a lawyer does not turn an unprivileged communication into a privileged one. *McCullough v. Fraternal Order of Police, Chi. Lodge 7*, 304 F.R.D. 232, 237 (N.D. Ill. 2014). Nothing in those entries suggests anyone was seeking legal advice at all.

***Third parties defeat confidentiality across the Logs.***

"A party waives the attorney-client privilege when the otherwise privileged documents are disclosed to a third party." *Grochocinski v. Mayer Brown Rowe & Maw LLP,* 251 F.R.D. 316, 326 (N.D. III. 2008). The common-interest doctrine can sometimes preserve a privilege despite a third party, but courts construe it narrowly,

and the party invoking it must prove that it applies. *In re Dealer Mgmt. Sys. Antitrust Lit.*, 335 F.R.D. 510, 514 (N.D. Ill. 2020). Belofsky never invokes it on any entry. Exs. A, D, F, G.

Consider who is included on these emails. Richard Saldinger – counsel of record in this bankruptcy – is the sender of 67 logged emails. *Id.* Jason DeVore, Erin Wright, Troy Radunsky, and Stephen A. Viz copied appear throughout. *Id.* Belofsky claims his own privilege over another lawyer's correspondence, to recipients whose roles he will not identify, without ever asserting a common interest or a joint defense.

The accountant entries are worse. Les Olefsky, Alan Shapiro, and Jamie Gabel, of Shapiro Olefsky & Company, sent 17 withheld emails and 3 redacted ones; Alan Shapiro and Jamie Gabel appear as recipients on others. *Id.* Shapiro Olefsky and S&O Consulting are themselves subject to this Court's turnover orders. Dkt. 812; Dkt. 839. Several of the logged subject lines are about the citations served on the accountants – for example, "FW: Shapiro Olefsky & Co. and S&O Consulting" and "Fw: City v. Wilson | 3P Citations to Shapiro Olefsky and S&O Consulting." Ex. A at 2-3, 9-12, 23. Belofsky has never asserted that the accountants were engaged to assist him in rendering legal advice, and nothing on the Privilege Logs suggests it. Absent that showing, communications with an accountant are not privileged.

***Public court filings cannot be privileged, yet Belofsky redacted them.***

Dozens of Redacted Log entries forward filings and hearing dates from the City's public enforcement cases against the Debtors: "FW: City of Chicago v. Dion, LLC — Motion for Rule to Show Cause," "FW: City of Chicago v. Distinctive, LLC, et al.," "FW: Alias Third Party Citations return date," "FW: Condemnation Hearings Starting This Thursday," and "FW: 2024 L 004271 — Waiver of Service." Ex. D. Publicly filed documents and court dates are not confidential, and forwarding them to a lawyer does not make them so. The Logs give the City no way to tell how much of each redaction covers material of that kind – which is precisely the information Rule 26(b)(5) requires.

**D. The Trustee controls the Debtors' privilege so Belofsky may withhold nothing belonging to the 21 Debtors.**

A chapter 7 trustee controls a corporate debtor's attorney-client privilege and may waive it. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 358 (1985). The same logic reaches work product: a law firm may not invoke work-product protection to keep a trustee from the estate's own materials, because doing so would make the firm less accountable to its client. *In re ANR Advance Transp. Co.*, 302 B.R. 607, 617 (E.D. Wis. 2003).

The Trustee controls the privilege for all 21 Debtors. That alone resolves most of the dispute, because Belofsky names a Debtor in 212 of the 294 entries – 78 on the Withheld Log and 134 on the Redacted Logs. Exs. A and D. By his own account, then, 212 documents belong to the Trustee.

Belofsky's answer is that a Debtor's name appears only because the Debtor is the subject of the communication; the holder, he insists, is Wilson or Dass personally. On that theory the Trustee's control reaches nothing at all.

That theory fails three ways. First, it contradicts his own Privilege Logs. Belofsky claims privilege and work product over an entry titled "FW: Citation/Garnishment Rovo, LLC, & Dion LLC" – Dion is a Debtor – sent to him by another lawyer, Richard Saldinger, and copied to two more. Ex. A at 2. Wilson and Dass are not even on it. He claims work product protection over "FW: Motion to Avoid Fraudulent [Transfer]," naming Debtors STTA and B.A.S.S. & M. Ex. D at 2. He claims attorney-client privilege and work product over "Re: ALERT: Contact Received From Your FindLaw" website. *Id*. at 3. Entries like these cannot be explained as private advice to two individuals.

Second, it contradicts what Belofsky told the City for months. He said again and again that when he gave advice he did not distinguish between Wilson and Dass individually and the companies they owned and managed – that he might have told Wilson to dispose of real property without identifying which entity owned it, because he did not advise at that "granular" a level. Ex. B. The City put that account in writing on June 8, 2026. *Id*. Belofsky never disputed it. A lawyer who did not distinguish between the individuals and the entities cannot now insist that every one of 294 communications belonged to the individuals alone.

Moreover, Belofsky does not get to define whether an attorney-client relationship exists. "The client's reasonable belief rather than the attorney's words or actions

ultimately controls whether an attorney-client relationship has been formed." *UFT Commercial Fin., LLC v. Fisher*, 991 F.3d 854, 858 (7th Cir. 2021). Based on the statements from Wilson's § 341 testimony for the Debtors, it is apparent that Wilson believed that Belofsky acted as the Debtors' attorney with respect to entity incorporation and formation.

Third, it contradicts the record. Wilson identified Belofsky in November 2024 as "our Corporate attorney," the lawyer who created the South Dakota managers for the LLCs. Ex. C. Wilson testified at the § 341 meeting that he advised on transfers of property between the Debtors and the Affiliated Entities. He formed many of the Debtors, serves as their registered agent, and has appeared for them in court. He was paid for his legal work for the Debtors.

At a minimum, the City is entitled to the 212 documents that name a Debtor.

**E. The Debtors' client file belongs to the Debtors – and so to the Trustee and the City.**

Two independent grounds require turnover. First, it is the client's file. "The client is presumed to be entitled to full access to the attorney's file on a matter where the attorney represented the client." Restatement (Third) of Law Governing Lawyers § 46(2); *see also*, *In re ANR Advance Transp. Co., Inc.*, 302 B.R. at 614. A trustee may demand, on the debtor's behalf, the documents the debtor could have demanded. *In re Black Diamond Min. Co., LLC*, 507 B.R. 209, 214-215 (E.D. Ky. 2014). The Debtors were Belofsky's clients. The City and the Trustee now hold the Debtors' rights. The file follows. That a non-Debtor entity appears in a subject line changes nothing: correspondence about the Debtors' affairs is part of the Debtors' file.

Second, § 542(e) requires turnover on its own. was "intended to restrict, not expand, the ability of accountants and attorneys to withhold information from the trustee." *Weintraub*, 471 U.S. at 351. The reach of the statute is broad: "related to" is a highly general phrase given a broad common-sense meaning. *In re Black Diamond Min. Co., LLC*, 507 B.R. at 214–15. Where no privilege applies – and on these Logs none does – the information goes to the Trustee. *In re VeroBlue Farms USA, Inc.*, AP 19-09015, 2025 WL 1156563, at *9 (Bankr. N.D. Iowa Apr. 18, 2025).

**F. The Logs confirm that the production is still incomplete, and the Court should coerce compliance and award the City its fees.**

Set the privilege questions aside for a moment and read the Logs for what they omit. Every one of the 294 entries is an email. Neither Log contains a single text message, note, memorandum, engagement letter, invoice, or payment record – the very categories the subpoena demanded and the Order covers. Belofsky has not produced those documents, and he has not logged them either. Seven months after the subpoena and nearly four months after the Order, the City still does not know whether they exist.

That is a separate violation of the orders, and it confirms that a further order to comply will not be enough on its own. Civil contempt sanctions may be coercive, remedial, or both. *U.S. v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). Section 105(a) supplies the authority in this Court, *In re Sterling*, 140 F.4th 924, 931 (7th Cir. 2025), and Rule 37(b)(2) supplies it for a party who disregards a discovery order. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016).

Both forms of relief are warranted. A coercive per-diem sanction is the only measure left that Belofsky has not already absorbed: he has sat through a subpoena, a turnover order, an order entered on the Court's own motion, six conferences, and two motions without moving from the position he took in June. And the City should be made whole. It has now briefed this dispute three times to obtain documents the Court ordered turned over in May, while the deadline for the estate's claims runs down. The fees the City has spent doing so are the direct, measurable cost of Belofsky's contempt, and he should pay them.

## IV. Conclusion

Belofsky has had a subpoena, two court orders – one entered on the Court's own motion to make him obey the other – six meet and confers, and seven months. What the City has to show for it is 294 log entries that describe nothing, name no client, and establish no privilege, and a production with no invoice, no text message, and no note. Meanwhile the October 2026 deadline runs, and the estate's claims sit inside the file Belofsky will not produce.

The City asks this Court to find Douglas Belofsky in civil contempt of the May 12, 2026 and the July 21, 2026 orders; to provide that he may purge the contempt within seven days by producing every document listed on the Withheld Log, producing without redaction every document listed on the Redacted Log, and producing or properly logging the remaining record information the Order covers; to impose a coercive daily sanction if he does not; and to award the City its reasonable attorney's fees and costs for bringing this motion.

Dated: September 8, 2026

Respectfully submitted,

**CITY OF CHICAGO**

Corporation Counsel
Mary B. Richardson-Lowry

By /s/ Angelica Harb
Assistant Corporation Counsel

Angelica Harb, Assistant Corporation Counsel
City of Chicago Department of Law
121 North La Salle Street, Suite 400
Chicago, Illinois 60602
312-742-0661
Angelica.harb@cityofchicago.org
COALservice@cityofchicago.org